UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEAUDRA CONRAD WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>OGNJEN PETRAS, et al.,<br><br>Defendants. | No. 2:19-cv-0605 KJM DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

1

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## I. Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

At all relevant times, plaintiff was a state inmate housed at California Medical Facility ("CMF") in Vacaville, California. He names as defendants Dr. Ognjen Petras, plaintiff's primary

care physician ("PCP"); Dr. Usha Pai, a CMF on-call emergency room doctor; and Registered Nurse ("RN") Quy Ho, a CMF emergency room nurse. Each defendant is sued in his or her individual capacity. Plaintiff seeks damages for violations of his Eighth Amendment rights.

Plaintiff's allegations may be fairly summarized as follows:

Based on plaintiff's medical records, Dr. Petras diagnosed plaintiff with Type 2 diabetes on September 15, 2017. Plaintiff, however, disputes that he was ever informed of this diagnosis by Dr. Petras or any other CMF physician. He also claims that he was never directed to reduce his carbohydrate intake, and he was never informed of or prescribed any oral diabetes medication that would have been indicated by his hemoglobin A-1 C results. Dr. Petras also failed to monitor plaintiff's diabetes monthly or to have his blood sugar checked daily. Plaintiff claims Dr. Petras deliberately withheld the diabetes diagnosis.

In late-October 2017, plaintiff began experiencing extreme nausea, profuse vomiting, blurred vision, vertigo, and mental confusion for over five consecutive days. He submitted a request for medical care and was seen by Dr. Petras on November 1, 2017. At this appointment, Dr. Petras, despite knowing of plaintiff's diabetes, failed to conduct any sort of physical examination and/or a quick "finger stick" glucose test that would have revealed plaintiff's dangerously high blood glucose level. Instead, Dr. Petras diagnosed plaintiff with influenza, provided him with Visine eye drops for the blurred vision, and referred him to the Eyes, Ears, Nose and Throat ("EENT") clinic.

Shortly after midnight on November 5, 2017, a medical emergency alarm was activated after plaintiff was found unresponsive in his living quarters. RN Ho, who completed a "First Medical Responder Assessment Form," noted that plaintiff was found in a coma and immediately given supplemental oxygen and two injections of Naloxone. When these proved ineffective, plaintiff was transferred to the CMF's emergency room where RN Ho performed a "finger stick" glucose test that revealed a blood glucose level of 484 (a normal range is from 70-115 mg/dl). This high range suggested Diabetic Ketoacidosis ("DKA"), a life-threatening diabetic coma. RN Ho then performed CPR because plaintiff's heart stopped.

Once plaintiff reached the CMF emergency room, Dr. Pia—the on-call emergency room doctor—was called about plaintiff's condition. Despite the seriousness of it, Dr. Pia refused "to get out of bed" to come to the emergency room and instead "practice[ed] medicine via telephone with defendant HO." Per plaintiff, Dr. Pai did not come to the emergency room because "Plaintiff was just another Black inmate that had overdosed on some drug so if he died, his death would help reduce the prisoner overpopulation of the CDCR and CMF."

After plaintiff arrived at the emergency room, he was forced to wait "almost an entire hour" for RN Ho to submit a CDCR Form 7252 ("Request for Authorization of Temporary Removal for Medical Treatment") to a watch commander before plaintiff could be transferred to an outside facility for emergency care. Plaintiff contends this delay was unreasonable because the watch commander was located only 200 feet from the triage area where RN Ho and a second RN were on duty. Despite the short distance and the presence of other nearby officers who could also take the form to the watch commander, RN Ho waited until a third RN arrived to have the form submitted.

Notwithstanding these allegations, plaintiff also alleges that RN Ho's Progress Notes indicated that she called the watch commander at 12:22 about transferring plaintiff to an outside facility for emergency care, that the watch commander informed her that he needed the Form 7252 in order to call the code, but that the form could not be delivered until 12:55 due to plaintiff's "deterioration [sic] condition, and there were only 2 RNs in [the triage area]." Plaintiff claims that delays of this nature are routine for Black inmates like plaintiff seeking medical care. He also claims that the delay contributed to the deterioration of his condition, but he does not specify how. Lastly, plaintiff accuses RN Ho of modifying her progress notes to reflect a lower glucose level than existed at the time to "cover-up [her] malfeasance and incompetentce [sic]."

Plaintiff was finally transferred to an outside hospital where he was placed in the Intensive Care Unit. There, his blood glucose level measured 1244. Plaintiff regained consciousness on November 8 and was discharged on November 10.

1   Upon his return to CMF, plaintiff requested to be seen by the institution's physical therapy
2   department for help in learning how to walk without falling since his overall ability to ambulate
3   was affected by his coma. This request was denied by an unidentified individual(s).

4   **IV.     Discussion**

5   Where a prisoner's Eighth Amendment claims arise in the context of medical care, the
6   prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate
7   indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth
8   Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and
9   the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059
10  (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th
11  Cir. 1997) (en banc).

12  A serious medical need exists if the failure to treat the condition could result in further
13  significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091,
14  1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of
15  facts from which the inference could be drawn that a substantial risk of serious harm exists, and
16  he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant
17  is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk
18  by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted
19  or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

20  In applying this standard, the Ninth Circuit has held that before it can be said that a
21  prisoner's civil rights have been abridged, "the indifference to his medical needs must be
22  substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause
23  of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle,
24  429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating
25  a medical condition does not state a valid claim of medical mistreatment under the Eighth
26  Amendment. Medical malpractice does not become a constitutional violation merely because the
27  victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d
28  1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate

indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Plaintiff has properly alleged an Eighth Amendment deliberate indifference claim against Dr. Petras. Plaintiff first alleges that this defendant failed to inform that he had diabetes, failed to instruct him about limiting his carbohydrate intake, failed to otherwise monitor his condition, and failed to address treatment options. He then alleges that when he presented to Dr. Petras in a serious condition, Dr. Petras failed to conduct a physical exam or perform a basic blood test. Instead, he diagnosed plaintiff with the flu, gave plaintiff eye drops, and referred him to the EENT clinic. This conduct, alone and in combination, resulted in plaintiff suffering a nearly fatal diabetic coma. These allegations are not merely a difference of opinion about the proper course of treatment because plaintiff alleges that the course of treatment pursued by Dr. Petras was medically unacceptable under the circumstances. Similarly, that Dr. Petras provided *some* treatment does not undermine an Eighth Amendment claim. See Ortiz, 884 F.2d at 1314.

Plaintiff's allegations against RN Yo and Dr. Pai, however, are insufficient to proceed. As to the former, the allegations reveal that RN Yo provided emergency medical care after plaintiff

6

was found unresponsive. While plaintiff alleges that this defendant delayed in submitting a necessary form to a watch commander, his allegations reveal that the delay was only 32 minutes and was based, at least in part, on tending to him due to the seriousness of his condition. Furthermore, plaintiff has not attributed any injury to that delay. Additionally, RN Ho's alleged lack of training that resulted in her inability to tell the difference between a drug overdose and diabetic ketoacidosis does not state a claim. As noted supra, a medical provider's negligence in diagnosing or treating a medical condition "does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Finally, even if RN Ho's alleged modification of the glucose level to 84 mg/dL can be reconciled with the allegation that RN Ho's assessment form *currently* indicates a blood glucose level of 484 mg/dL, this subsequent change does not, without more, suggest deliberate indifference. There is also no claim of injury attributed to the change.

Similarly, Dr. Pai's refusal to come to the emergency room when contacted about plaintiff's medical condition does not state a claim. Since plaintiff was unconscious at the time, it appears his claim that Dr. Pai refused "to get out of bed" is based on mere speculation. Plaintiff would also have been unaware of the nature of the call made to Dr. Pai, and Dr. Pai's instructions to RN Ho or any other individual involved in plaintiff's care on November 5.

**V.     Conclusion**

Plaintiff's complaint states a cognizable Eighth Amendment medical indifference claim against Defendant Dr. Petras. The remaining claims are not cognizable as plead. The Court will grant plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

If plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claim found to be cognizable, he may file a notice informing the Court that he does

not intend to amend, and he is willing to proceed only on his cognizable claim. The undersigned will then recommend that his remaining claims be dismissed, and the Court will provide information regarding the process for obtaining subpoenas duces tecum.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;

4. Within thirty (30) days from the date of service of this order, plaintiff must:

8

  a. File an amended complaint curing the deficiencies identified by the Court in this order, or

  b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claim found to be cognizable in this order; or

  c. Notify the Court in writing that he wishes to stand on his complaint as written; and

5. If plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: August 5, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/will0605.scrn